<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LAWAND HILL,<br><br>    Plaintiff,<br><br>    v.<br><br>SLOPPY VINYL, LLC; MICHAEL<br>CAMERON, *individually*; WATER MUSIC<br>PUBLISHING, *doing business as*<br>RICH WATER PUBLISHING; and JOHN<br>DOE COMPANIES 1-20,<br><br>    Defendants. | Case No. 2:25-cv-15238 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Michael Cameron ("Cameron"), Sloppy Vinyl, LLC ("Sloppy Vinyl"), and Water Music Publishing's ("WMP") (collectively, "Defendants") Motion to Dismiss (ECF No. 18) *pro se* Plaintiff Lawand Hill's ("Plaintiff") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff filed an Opposition. (ECF No. 22.) Defendants filed a Reply. (ECF No. 23.) Having reviewed and considered the parties' submissions filed in connection with the motion, and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED** and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**I.    BACKGROUND**

For purposes of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Philips v.*

1

*Cnty. of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Since Plaintiff is proceeding *pro se*, the Court attempts to glean her factual allegations and legal claims through a liberal construction of her pleading. *See Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005); *Cooke v. Experian Info. Sols., Inc.*, Civ. A. No. 22-05375, 2024 WL 1142214, at *2 (D.N.J. Mar. 15, 2024) ("When considering a motion to dismiss the complaint of a pro se litigant, courts must bear in mind that such pleadings are held to less stringent standards than more formal pleadings drafted by lawyers."); *Huff v. Atl. Cnty. Just. Facility*, Civ. A. No. 20 9761, 2021 WL 307303, at *2 (D.N.J. Jan. 29, 2021) ("Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making.").

Plaintiff, an independent recording artist, signed a recording agreement with WMP on August 13, 2017, and a second recording agreement with Defendants on April 23, 2020. (ECF No. 1 ¶¶ 8, 13–14.) In or around January 2023, Plaintiff signed a "draft agreement," but Defendants did not provide her with a signed copy. (*Id.* ¶ 15.) Plaintiff alleges Cameron, the "principal owner and operator" of Sloppy Vinyl and WMP, "coerced Plaintiff into a sexual relationship under threat of career retaliation" and "engaged in repeated verbal harassment and humiliation of Plaintiff in front of other artists and staff." (*Id.* ¶¶ 10, 16–17.) This conduct started in Spring 2021 and continued into 2023. (*Id.* ¶¶ 16–17, 19.) In December 2022, she became suicidal, which she attributes to Defendants' conduct. (*Id.* ¶ 18.)

Plaintiff "separated from Defendants" in 2023. (*Id.* ¶ 19.) On October 1, 2023, "Defendants sublicensed Plaintiff's catalog to Foundation Media," despite allegedly "never holding valid rights to Plaintiff's works." (*Id.* ¶ 20.) In or around March 2024, Defendants' conduct "rendered her ineligible" for a "new televised program," and on September 25, 2024, Plaintiff "received a 30-day notice to vacate due to late rent" allegedly because of "Defendants' refusal to honor settlement obligations and their continued bad-faith tactics." (*Id.* ¶¶ 21–22.)

On April 14, 2025, Plaintiff "executed a Settlement Release [(the 'Settlement Agreement')] with Sloppy Vinyl and Cameron." (*Id.* ¶ 23.) Plaintiff alleges Defendants failed to provide her with an accounting as required by the Settlement Agreement and instead "asserted fabricated 'balances' against Plaintiff." (*Id.* ¶¶ 24–25.) Further, as of September 2025, "a TikTok post featuring Plaintiff's likeness remains publicly pinned on account @onlyjahmez, in direct violation of the [Settlement Agreement] . . . and without Plaintiff's authorization." (*Id.* ¶ 26.)[1]

Plaintiff alleges "Defendants' conduct caused severe emotional distress, financial harm, reputational damage, and unlawful exploitation of Plaintiff's works and likeness." (*Id.* ¶ 27.) Plaintiff filed a Complaint with six counts: copyright infringement (Count I); breach of contract (Count II); fraudulent inducement (Count III); intentional infliction of emotional distress (Count IV); misuse of name, image, and likeness (Count V); and unjust enrichment (Count VI). (*Id.* ¶¶ 28–46.) On October 28, 2025, Defendants filed the Motion to Dismiss. (ECF No. 18.) Plaintiff filed her Opposition on November 20, 2025. (ECF No. 22.) Defendants filed a Reply on November 24, 2025. (ECF No. 23.)

---

[1] Plaintiff does not specifically allege the "@onlyjahmez" account belongs to Defendants. (*See generally* ECF No. 1.) However, the Court reads the Complaint to allege same, as the Court must draw all inferences in the light most favorable to Plaintiff at this stage. *See Philips v. Cnty. of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008).

**II.     LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); and then quoting Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a "recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). In assessing plausibility, the court

may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

**III.   DECISION**

Defendants argue all of Plaintiff's claims "must be dismissed in their entirety because Plaintiff executed [the Settlement Agreement, which] . . . expressly released all of these claims against the Defendants." (ECF No. 18-4 at 4–8.) Defendants also contend they did not breach the Settlement Agreement, and even if a breach occurred, such a breach would not overcome Plaintiff's release of all her claims. (*Id.* at 8–12.)

In response, Plaintiff argues the Settlement Agreement did not become operative because Defendants failed to perform a condition precedent. (ECF No. 22 at 6–9.) Plaintiff further asserts even if the Settlement Agreement had taken effect, it is unenforceable because Defendants "materially breached every single obligation imposed upon them." (*Id.* at 9–18.) Plaintiff also posits the declarations attached to Defendants' motion cannot be considered on motion to dismiss, and even if they could, they "would still fail because several of their core factual assertions are directly contradicted by objective documentary evidence." (*Id.* at 19–21.) Finally, Plaintiff claims her Complaint contains sufficient factual allegations to survive a motion to dismiss. (*Id.* at 22.)

A settlement agreement "is a contract and is, therefore, governed by state contract law." *Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, Civ. A. No. 21-2530, 2023 WL 3983877, at *3 (D.N.J. June 13, 2023) (citing *Jacob's Limousine Transp., Inc. v. City of Newark*, 688 F. App'x 150, 151 (3d Cir. 2017); *Excelsior Ins. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348–49 (D.N.J. 1996)). "In construing contracts, the Supreme Court of New Jersey has repeatedly instructed that 'clear and unambiguous' contracts leave 'no room for interpretation or construction' and must be enforced 'as written.'" *Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 673 (D.N.J. 2015) (quoting S*heet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)). Therefore, absent 'some mistake, fraud, duress,

or other 'imposition,' . . . parties will be bound by the clear and unambiguous terms of their agreements." *Id.* at 674 (citing *Weisman v. N.J. Dep't of Hum. Servs.*, 982 F. Supp. 2d 386, 395 (D.N.J. 2013)).

"[I]n New Jersey, there is a strong public policy in favor of settlements." *Ortho-Clinical Diagnostics, Inc.*, 2023 WL 3983877, at *3 (citing *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990)); *see also, e.g.*, *Peskin v. Peskin*, 638 A.2d 849, 856 (N.J. Super. Ct. App. Div. 1994) ("It is fundamental that the settlement of litigation ranks high in the public policy of [New Jersey]."); *Williams v. Newark Beth Isr. Med. Ctr.*, 322 F. App'x 111, 113 (3d Cir. 2009). This "strong policy of enforcing settlements is based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" *Brundage v. Estate of Carambio*, 951 A.2d 947, 961 (N.J. 2008) (quoting *Peskin*, 638 A.2d at 856). To further this policy, New Jersey courts "strain to give effect to the terms of a settlement wherever possible." *Id.* (quoting *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 503 A.2d 331, 334 (N.J. Super. Ct. App. Div. 1985)).

"[A] release of claims pursuant to a settlement agreement is [a] simple legal contract, which 'should be enforced to preclude a lawsuit stemming from the related events provided there is no applicable exception to the release defense.'" *Weisman*, 982 F. Supp. 2d at 392 (quoting *Weisman v. N.J. Dep't of Hum. Servs.*, 817 F. Supp. 2d 456, 461 (D.N.J. 2011)). Here, Plaintiff does not claim she entered the Settlement Agreement because of mistake, fraud, duress, or another imposition. (*See generally* ECF No. 22.) Rather, she claims the Settlement Agreement never became operative because of the alleged failure of Defendants to perform a condition precedent. (*Id.* at 6–9.)

The Settlement Agreement provides:

> The Parties hereby agree that as a condition of this Settlement and Release Agreement becoming effective the parties shall substitute Artist in the place of SV in the Foundation Agreement. To achieve this substitution, the Parties shall immediately execute the amendment to the Foundation Agreement attached as Exhibit [A] in conjunction herewith.

(Settlement Agreement (ECF No. 1 at 107–15) ¶ 1(c).) Plaintiff argues this paragraph created a "clear and mandatory condition that had to occur before any contractual duties could arise: (1) Plaintiff had to be substituted into the Foundation Agreement, and (2) the Amendment effectuating that substitution had to be executed immediately and transmitted to Foundation." (ECF No. 22 at 6.) However, as Defendants point out, the plain language of this paragraph demonstrates that to achieve the required substitution of Plaintiff for Sloppy Vinyl in the Foundation Agreement, the parties—*i.e.*, Plaintiff and Sloppy Vinyl—only needed to take one action: "immediately execute the amendment to the Foundation Agreement attached as Exhibit [A] in conjunction herewith." (Settlement Agreement ¶ 1(c).) And as the face of Exhibit A makes clear, the parties did execute Exhibit A. (Settlement Agreement at 7.) Plaintiff's arguments to the contrary therefore fail, as the parties to the Settlement Agreement completed the one method required of them to satisfy the condition in paragraph 1(c).[2]

---

[2] As Defendants point out, Plaintiff's Opposition contains citations to nonexistent case law. (ECF No. 23 at 6 n.1, 14 n.3.) For example, Plaintiff repeatedly cites to *Duff v. Trenton Beverage Co.*, 73 A.2d 578 (1950) for the proposition that a contract "never becomes binding" if a condition precedent is not completed. (*See* ECF No. 22 at 5–7.) However, that quote is not contained in *Duff*. Additionally, Plaintiff cites to *Mazziotti v. Allstate Ins. Co.*, 240 N.J. Super. 173, 180 (App. Div. 1990) (ECF No 22. at 5–6) to support a proposition of New Jersey law, but that citation appears to be an incorrect citation for the Connecticut case of *Mazziotti v. Allstate Ins. Co.*, 695 A.2d 1010 (Conn. 1997), and Plaintiff's quotation attributed to *Mazziotti* does not appear in the Connecticut case. Moreover, Plaintiff cites to *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) for the proposition "a district court 'may not consider matters extraneous to the pleadings' on a motion to dismiss," but that quote appears nowhere in *Jordan*.

Having found the Settlement Agreement to be operative, the Court next examines the release provision:

> 2. Release. Each party hereby forever releases and discharges the other (and their respective affiliates, successors, assigns, predecessors, and our past, present and future principals, shareholders, officers, directors, employees, agents and attorneys; we and all such persons and entities are sometimes called "Releasees" herein) from any and all claims, demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements, contracts, and promises in law or in equity, which either party now has, has had, or at any time may have, against the other or any of the releasees, whether known or unknown, by reason of any matter, cause, or thing whatsoever now existing or at any time, in any way related to the relationship of the Parties hereto, including but not limited to, all claims for contract damages, special, general, direct and consequential damages, compensatory damages, loss of profits, injury to persons or property, emotional distress, punitive damages, attorney fees and any and all other damages of any kind or nature arising under the Talent Agreements and SV Agreements or otherwise, including, without limitation, any obligation to pay any monies under the Talent Agreements or SV Agreements, except as set forth in this Release and Settlement Agreement whether or not now or heretofore owing or accrued.

(Settlement Agreement ¶ 2.)

---

To the extent Plaintiff used artificial intelligence in drafting her papers, the Court reminds Plaintiff "[w]hile courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority." *Robinson v. Oglala Sioux Tribe*, Civ. A. No. 25-289, 2025 WL 2609573, at *4 (W.D. Okla. Sept. 9, 2025) (quoting *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025)); *see also DeAngelo v. Freedom Mortg.*, Civ. A. No. 25-cv-13099, 2025 WL 4275514, at *3 n.4 (D.N.J. Nov. 12, 2025) ("Plaintiff is reminded that her *pro se* status does not shield her from sanctions under Federal Rule of Civil Procedure 11, which provides that any pleading, written motion or other paper submitted to the court must certify to the best of that person's knowledge, information and belief and formed after an inquiry reasonable under the circumstances that it is not being presented for an improper purpose, such as to harass, and that the claims and legal contentions are warranted by existing law or by a nonfrivolous argument that existing law should [not] apply."). Therefore, in any future filings with the Court, Plaintiff is directed to read the cases she cites with greater care to ensure she is not only citing real cases but also accurately characterizing what those cases say.

Here, the Court is satisfied this release encompasses Plaintiff's claims. The release applies to "*any and all*" claims that Plaintiff "at any time may have" against Defendants,[3] "by reason of *any* matter . . . in *any* way related to the relationship of the Parties hereto." (*Id.* (emphasis added).) "[I]t is a bedrock principle of contract interpretation that the 'phrase "any and all" allows for no exception.'" *Giaccone*, 133 F. Supp. 3d at 675 (quoting *Isetts v. Borough of Roseland*, 835 A.2d 330, 335–36 (N.J. Super. Ct. App. Div. 2003)). Plaintiff does not argue the release provision is ambiguous or unclear in any way. (*See generally* ECF No. 22.) Nor does Plaintiff assert her claims do not fall within the release's scope. (*Id.*) In short, "the Settlement Agreement could not be clearer in its broad expression of the scope of the released claims," *Giaccone*, 133 F. Supp. 3d at 675, and the Court is satisfied the Settlement Agreement's release provision bars Plaintiff's action.

In the alternative, Plaintiff asserts even if the Settlement Agreement took effect, "Defendants still cannot enforce it because they materially breached every single obligation imposed upon them." (ECF No. 22 at 9.)[4] This argument fails for two reasons. First, the Settlement Agreement contains a provision requiring notice and an opportunity to cure in the event of a breach:

---

[3] The release applies not only to Plaintiff and Sloppy Vinyl—the parties to the Settlement Agreement—but also to "their respective affiliates, successors, assigns, predecessors, and our past, present and future principals, shareholders, officers, directors, employees, agents and attorneys." (Settlement Agreement ¶ 2.) Therefore, the release also applies to Cameron as "the principal owner and operator of Sloppy Vinyl, LLC and Water Music Publishing" (ECF No. 1 ¶ 10) and WMP as "a publishing entity affiliated with Cameron and Sloppy Vinyl, through which Plaintiff was initially contracted (*id.* ¶ 11).

[4] Plaintiff raises many of the alleged breaches for the first time in her Opposition. (*Compare* ECF No. 1, *with* ECF No. 22.) However, to the extent Plaintiff has sought to provide additional facts in her opposition, "[i]t is axiomatic that the [C]omplaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984)).

> 5. Default. An "Event of Default" shall occur if any Party breaches any of their representations, warranties or obligations under this Agreement. Upon the occurrence of an Event of Default by Sloppy Vinyl or Mr. Cameron, LAW [*i.e.*, Plaintiff] shall send written notice by overnight carrier and electronic mail to Sloppy Vinyl and Mr. Cameron at the following address: Fox Rothschild, LLP, 101 Park Avenue, New York, New York 10017 Attn: Paul N. Bowles, Esq. and Leron Rogers, Esq., pbowles@foxrothschild.com and lrogers@foxrothschild.com, informing Sloppy Vinyl and Mr. Cameron of the Event of Default and providing Sloppy Vinyl or Mr. Cameron fifteen (15) days from the date of receipt to cure such default. . . . Should either party fail to cure an Event of Default within the fifteen (15) day cure period, either party shall be immediately entitled to pursue any and all remedies available at law without any further notice written or otherwise.

(Settlement Agreement ¶ 5.) Plaintiff neither alleges in her Complaint she provided the requisite notice (*see generally* ECF No. 1) nor argues in her Opposition she provided such notice (*see generally* ECF No. 22). The default provision is clear and unambiguous, requiring a specific method of notice and opportunity to cure any breaches before a lawsuit is filed, yet Plaintiff undisputedly failed to follow it. Plaintiff cannot now argue Defendants' alleged breaches prevent them from enforcing the Settlement Agreement. *See In re Tri Harbor Holdings Corp.*, Case No. 19-13448, 2021 WL 4877265, at *29 (Bankr. D.N.J. Oct. 5, 2021) (finding an "Agreement's Notice and Termination provisions to be clear and unambiguous" and concluding the defendant's argument the plaintiffs were "in breach of the Agreement does not obviate the need to give proper notice of [their] breach or termination. In fact, it highlights the need for that proper notice").

Second, even if Defendants materially breached the Settlement Agreement, "[i]t is well-settled that, where one party commits a material breach, 'the non-breaching party may not stop performance while continuing to take advantage of the contract's benefits.'" *Travelodge Hotels, Inc. v. Durga, LLC*, Civ. A. No. 15-8412, 2024 WL 4345051, at *11 (D.N.J. Sept. 30, 2024)

11

(quoting *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 133–34 (D.N.J. 2012)). Indeed, as the Third Circuit has explained,

> Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits.

*Id.* (quoting S*&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992)). Here, it appears Plaintiff is attempting to stop her performance under the Settlement Agreement by litigating released claims, while simultaneously accessing the benefits of the Settlement Agreement, as demonstrated by a separate lawsuit filed by Plaintiff in the United States District Court for the Southern District of New York, entitled *Hill v. Foundation Media, LLC*, in which she relies on the Settlement Agreement. (Civ. A. No. 1:25-cv-05947, ECF No. 34).

Accordingly, because the Settlement Agreement's release provision bars Plaintiff's claims, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.[5]

---

[5] Defendants argue, under paragraphs 6 and 10 of the Settlement Agreement, Plaintiff must pay Defendants' attorneys' fees and costs incurred in responding to Plaintiff's Complaint. (ECF No. 18-4 at 12–14.) The Court disagrees. Paragraph 10 of the Settlement Agreement—an indemnification clause—provides:

> 10. Indemnification. [Plaintiff] hereby irrevocably covenants, promises and agrees to defend, indemnify and forever hold harmless Sloppy Vinyl and Mr. Cameron, and their respective employees, agents, representatives, attorneys, successors, assigns and all persons or entities acting in active concert with Sloppy Vinyl and Mr. Cameron, against any and all loss or liability, judgment and defense costs and expenses resulting from any and all claims, demands or causes of action of any nature and kind whatsoever, based upon, connected with, or arising out of a breach of any of

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED**, and Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: March 5, 2026

---

[Plaintiff's] representations, warranties or obligations under this Agreement, its Exhibit A, and the Distribution Agreement.

(Settlement Agreement ¶ 10.) Under New Jersey law, "[i]t is only when the indemnitee is found liable to a third party that the indemnification agreement may be triggered." *Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 181 (3d Cir. 2011) (quoting *Invs. Savings Bank v. Waldo Jersey City, LLC*, 12 A.3d 264, 271 (N.J. Super. Ct. App. Div. 2011); *see also Invs. Savings Bank*, 12 A.3d at 270 ("It is axiomatic . . . that an indemnification agreement must be based upon 'the indemnitee's claim to obtain recovery from the indemnitor for liability incurred to a third party.'" (quoting *Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 766–67 (D.N.J. 2008), *aff'd*, 594 F.3d 238 (3d Cir. 2010))). Defendants are not seeking indemnification for third party liability. Therefore, paragraph 10 of the Settlement Agreement does not apply.

The Settlement Agreement contains a separate provision specifically relating to attorneys' fees:

> 6. If any party violates any portion of this Release and Settlement Agreement and the *aggrieved party initiates suit* thereon, the prevailing party shall be entitled to an award of reasonable attorneys' fees in addition to any other relief, including monetary damages.

(Settlement Agreement ¶ 6 (emphasis added).) "Under New Jersey law, [the Court] must interpret the parties' contract according to its plain language, by reading the document as a whole in a fair and common sense manner." *Atl. City Assocs., LLC*, 453 F. App'x at 181 (quoting *Travelers Indemnity Co.*, 594 F.3d at 255). Here, Defendants are the "aggrieved party," but they did not "initiate[]" a suit in response to a violation of the Settlement Agreement. Therefore, under a plain reading of paragraph 6, Defendants are not entitled to attorneys' fees.